UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEBASTIAN CABREJA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>MARCO & FAMILY TIRES AUTO MECHANIC LLC,<br>MARCO PRENSA, and<br>ZULAIKA HERRERA ALMONTE,<br><br>*Defendants*. | Civil Action No. 23-00231<br><br>**OPINION**<br><br>June 16, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on Plaintiff Sebastian Cabreja's Motion for Default Judgment against Defendants Marco & Family Tires Auto Mechanic LLC ("MFTAM"), Marco Prensa, and Zulaika Herrera Almonte pursuant to Federal Rule of Civil Procedure 55(b)(2). (ECF 45, "Mot.")[1]  The Court has decided this motion upon submission, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1.  For the reasons stated below, Plaintiff's motion is **GRANTED**.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a natural person who resides in the State of New York.  (ECF 1, "Complaint" or "Compl." at ¶ 5.)  Defendant MFTAM is a domestic limited liability company engaged in the business of automotive maintenance and repairs, with its principal place of business at 1046 Garfield Avenue #114, Jersey City, New Jersey 07304.  (*Id*. ¶ 8.)  Defendants Prensa and Almonte

---

[1] When the Court refers to "Motion" or "Mot." herein, we refer simultaneously to ECF 45, the Motion for Default Judgment itself, and ECF 46-49, the Affidavits and Memorandum in Support of the Motion for Default Judgment.

1

are natural persons residing in the State of New Jersey. (*Id.* ¶ 9.) Defendants Prensa and Almonte own and operate MFTAM, and Plaintiff was employed by MFTAM as an auto mechanic from February 1, 2021 to August 25, 2022. (*Id.* ¶¶ 10-15, 25.) In the scope of his work as an auto mechanic, Plaintiff alleges that he replaced car tires, replaced brakes, and changed motor oil, among other duties. (*Id.* ¶ 26.)

Plaintiff alleges that during the entirety of his employment with MFTAM, he worked approximately 66 hours per week. (*Id.* ¶ 27.) He further alleges that during this employment period, he received a fixed salary of $850.00 per week. (*Id.* ¶ 29.) Plaintiff alleges that, pursuant to New Jersey state laws and federal law, he was entitled to overtime compensation worth 1.5 times his regular hourly pay or the applicable minimum wage, whichever is greater, for all hours he worked in excess of forty hours per week. (*Id.* ¶ 30.) Plaintiff contends that Defendants unlawfully withheld his overtime pay during his employment period. (*Id.* ¶¶ 31-33.) Plaintiff also contends that Defendants paid him part of his wages in checks (with withholdings for federal, state, and local taxes) and part in cash (without tax withholdings), and that Defendants filed false and fraudulent W-2 forms with the Internal Revenue Service that did not reflect the cash payments they made to Plaintiff. (*Id.* ¶¶ 34-38.)

On January 17, 2023, Plaintiff filed the instant suit, seeking equitable and legal relief for Defendants' alleged violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"); the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56(a), *et seq.* ("NJWHL"); and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPL"); and seeking civil damages for fraudulent filing of information returns under 26 U.S.C. § 7434. (*Id.* ¶¶ 41-78.) Specifically, Plaintiff brings six causes of action against Defendants: overtime violations under the FLSA (Count 1) and the NJWHL (Count 2); failure to pay minimum wages

under the FLSA (Count 3) and the NJWHL (Count 4); failure to timely pay wages in violation of the NJWPL (Count 5); and fraudulent filing of information returns under 26 U.S.C. § 7434 (Count 6). (*Id*.) Plaintiff is joined in Count 1 and Count 3 by approximately five current and former employees of MFTAM (the "FLSA Collective Plaintiffs") who allege that they are similarly situated to Plaintiff Cabreja insofar as Defendants willfully and unlawfully denied them minimum wages and overtime compensation. (*Id*. ¶¶ 19-24.)

After filing the Complaint, Plaintiff served Defendants with true copies of the Summons and Complaint on February 6, 2023. (ECF 47, Exs. 1-3.) On March 24, Defendants retained counsel, and the parties jointly stipulated that Defendants' time to respond to the Complaint would be extended and that Defendants would acknowledge service of process and waive all objections and defenses to personal jurisdiction and improper service. (ECF 9.) On April 10, Defendants filed an Answer to the Complaint. (ECF 15.) On May 23, 2023, the Court issued a Pretrial Scheduling Order setting deadlines for discovery, motions, and future conferences. (ECF 20.) On August 11, 2023, counsel for Defendants filed a motion to withdraw their representation, due to the initiation of adverse legal proceedings between Defendants Almonte and Prensa, which the Court granted on October 11, 2023. (ECF 23, 29.) On granting the withdrawal motion, the Court advised Defendants that unless they retained new counsel by December 11, 2023, the Court would assume that they were proceeding *pro se*. (ECF 29.) On December 12, 2023, Plaintiff filed a status report notifying the Court that Defendants had not retained new counsel. (ECF 31.) On December 13, the Court scheduled an in-person conference to discuss whether Defendants had retained new counsel and advised Defendants that failure to appear at the conference could result in an Order to Show Cause why sanctions and default should not be entered against them. (ECF 32.) The Court held the conference on February 9, 2024, and Defendants failed to appear, resulting

3

in the issuance of the Order to Show Cause of which Defendants were warned; the Court directed Defendants to show cause by February 29, 2024, or face entry of default. (ECF 38.) Defendants failed to respond in time, and on August 26, 2024, Plaintiff requested that the Clerk of Court enter default against Defendants. (ECF 40.) The Clerk entered default against all three Defendants on August 28, 2024, and Plaintiff filed and served the instant Motion for Default Judgment on November 12, 2024. (ECF 45, 46, 47, 48, 49.)

The only response to the Motion that the Court has received to date are two letters from Defendant Almonte dated December 16, 2024 and January 30, 2025, which describe the financial and personal difficulties that have impeded her participation in this matter. (ECF 50, 54.) Plaintiff has responded to both letters, arguing that the Court afforded sufficient time and opportunities for Defendants to secure counsel. (ECF 51, 55). On December 18, 2024, the Court granted Defendant Almonte extra time until January 21, 2025 to secure legal representation. (ECF 52.) On January 23, 2025, the Court granted Defendant Almonte an additional extension of time to secure counsel until January 31, 2025. (ECF 53.) On May 29, 2025, after several meetings, conferences, and exchanges of correspondence, Plaintiff submitted a letter indicating that Defendant Almonte had failed to respond to discovery requests in violation of the Amended Pretrial Scheduling Order issued by the Court on March 4, 2025 (ECF 58). (ECF 61.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). Before the Court grants a motion for default judgment, however, it must ensure, *inter alia*, (1) that personal jurisdiction exists over the Defendants and (2) "that entry of default under Rule 55(a) was appropriate." *Gov't Emps. Ins. Co.*

4

*v. Pennsauken Spine & Rehab P.C.*, No. 17-11727, 2018 WL 3727369, at *2 (D.N.J. Aug. 6, 2018). Where the Court has jurisdiction, because the entry of default judgment prevents a decision on the merits, the mere fact of default does not entitle a plaintiff to judgment. Rather, "[i]t is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

Once a party has defaulted, the "consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). An entry of default judgment requires that the Court determine whether a sufficient cause of action has been stated "since a party in default does not admit mere conclusions of law." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). After a cause of action has been established, district courts must then determine whether the entry of default judgment would be proper by considering: (1) whether the party subject to default has a meritorious defense, (2) whether there is prejudice to the plaintiff if default judgment is denied, and (3) whether the default was due to the defendant's culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Hritz*, 732 F.2d at 1181.

### III. ANALYSIS

#### a. Jurisdiction[2]

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, LLC*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

The Court has both subject matter jurisdiction over this dispute and personal jurisdiction over the parties. Subject matter jurisdiction here originates in the federal questions presented in Counts 1, 3, and 6 of the Complaint under 28 U.S.C. § 1331 ("Section 1331"), and it extends to the New Jersey state law claims in Counts 2, 4, and 5 via supplemental jurisdiction under 28 U.S.C. § 1367(a) ("Section 1367(a)"). (Compl. ¶¶ 41-78.) Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States." In Counts 1 and 3, Plaintiff alleges that Defendants violated the FLSA by failing to pay him overtime and minimum wages. (*Id.* ¶¶ 41-47, 55-60.) In Count 6, Plaintiff alleges that Defendants filed fraudulent IRS Form W-2s in violated of 26 U.S.C. § 7434(a). (*Id.* ¶¶ 71-78.) Per Section 1331, this court has original jurisdiction over Counts 1, 3, and 6.

Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

---

[2] As noted in the Factual Background and Procedural History section, *supra*, Defendants jointly stipulated with Plaintiff to waive arguments and defenses against personal jurisdiction. (ECF 9.)

6

"Supplemental jurisdiction is appropriate when there is a common nucleus of operative fact and whether the claims are part of the same case or controversy under Article III." *Testa v. Hoban*, No. 17-1618, 2018 WL 623691, at *6 (D.N.J. Jan. 30, 2018) (internal citations and quotations omitted). Here, Counts 2 and 4 mirror exactly the claims in Counts 1 and 3, and Count 5 alleges that Defendants failed to timely pay Plaintiff as part of the same pattern of behavior alleged in the previous counts. (*Id.* ¶¶ 48-54, 61-70.) Accordingly, the Court finds these allegations share a "common nucleus of operative fact" with Plaintiff's federal claims against Defendants such that the claims in Counts 2 and 4 "are part of the same case or controversy." *Testa*, 2018 WL 623691, at *6. The Court will therefore exercise supplemental jurisdiction over Plaintiff's state law claims.

The Court also has personal jurisdiction over Defendants. "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (alteration in original) (internal quotation omitted). "Courts have applied the *Daimler* rules to limited liability companies with equal force." *Griggs v. Swift Transp. Co.*, No. 17-13480, 2018 WL 3966304, at *2 (D.N.J. Aug. 17, 2018) (quotation omitted). As a result, "for the purposes of general personal jurisdiction, a limited liability company's citizenship is that of its principal place of business and state of [formation]." *Rodriquez Rivera v. Loto Grp., LLC*, No. 20-4062, 2020 WL 7384720, at *1 (D.N.J. Dec. 16, 2020) (quoting *Hannah v. Johnson & Johnson Inc.*, No. 18-10319, 2020 WL 3497010, at *16 (D.N.J. June 29, 2020)). Here, Plaintiff alleges that Defendant MFTAM's principal place of business is in Jersey City, New Jersey. (Compl. ¶ 8.) Because MFTAM is "at home" in New Jersey, this Court has personal jurisdiction over MFTAM. The same principle applies to

Defendants Almonte and Prensa, who admitted in their Answer that they are residents of New Jersey and thus subject to this Court's jurisdiction. (ECF 15 ¶ 9.)

### b. Service of Process[3]

As a limited liability company, Defendant may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). In the alternative, service can be effectuated by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1); *id.* at 4(h)(1)(A). Service was allegedly made in New Jersey. According to New Jersey law, a limited liability company shall be served "by serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on an officer or managing agent or, in the case of a partnership, a general partner[.]" N.J. Ct. R. 4:4-4(a)(5).[4]

Here Plaintiff provides the Court with three Affidavits of Service filed on April 3, 2023. (ECF 12, 13, 14.) These Affidavits of Service indicate that personal service was made upon Defendants' collective Records Custodian, Raul Gonzalez, at 1046 Garfield Avenue, #114, Jersey City, NJ 07304 on February 6, 2023. (*Id.*) Thus, the Court is satisfied that it has jurisdiction to enter default judgment, and that Defendants were properly served. *See Doug Brady, Inc. v. N.J.*

---

[3] Again, as noted in previous sections, *supra*, Defendants stipulated that they acknowledge service of process and waive arguments and defenses related to improper service of process. (ECF 9.)

[4] N.J. Ct. R. 4:4-4(a)(1) states that service must be made "[u]pon a competent individual of the age of 14 or over, by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf."

*Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

### c. Sufficiency of Plaintiff's Causes of Action and Damages

After establishing that this Court has jurisdiction, and that service was proper, the Court must determine whether the Complaint states proper causes of action.

#### i. Counts 1 & 2: Overtime Violations

Section 206 of the FLSA sets the federal minimum wage, Section 207 sets the federal overtime rate at 1.5 times the minimum wage for all hours worked in excess of 40 hours per week, and Section 216 provides that "[a]ny employer who violates the provisions of section 206…of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. §§ 206(a), 207(a), 216(b). Section 211 of the FLSA imposes a mandate that "[e]very employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c). To prevail in an action under the FLSA, an employee must demonstrate that he performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686 (1946). In cases where employers fail to keep sufficient records, employees can sustain FLSA actions by providing the court with "estimates based on his own recollection." *Santiago v. Lucky Lodi Buffet Inc.*, 2016 WL 6138248, at *3 (D.N.J. Oct. 21, 2016) (citing *Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y.)).

Similarly, the New Jersey Wage and Hour Law establishes the minimum wage and overtime rate for the state of New Jersey, creates a private right of action for employees to recover

wrongfully unpaid wages, and requires employers to keep sufficient records of the hours worked by and wages paid to employees. N.J.S.A. §§ 34:11-56a4, 34:11-56a25, 34:11-56a20.

Here Plaintiff alleges that during the entire employment period, from February 1, 2021 to August 25, 2022, he worked approximately 66 hours per week and was paid a fixed salary of $850.00. (Compl. ¶¶ 25-40.) Plaintiff alleges that his work included changing motor oil, replacing tires and fixing brakes, making him a non-exempt employee and thus entitling him to the unpaid wages. (*Id.*) In support of these allegations, Plaintiff submits a spreadsheet summarizing his damages calculations, which lists his unpaid overtime wages in the sum of $67,139.28. (ECF 47, Ex. 5.) Accepting Plaintiff's well-pleaded allegations as true, the Court is persuaded that Plaintiff has stated sufficient claims for recovery of unpaid overtime wages owed to him pursuant to the FLSA and the NJWHL.

### ii. Counts 3, 4, & 5: Failure to Timely Pay Minimum Wages

In the Motion, Plaintiff notes that "Plaintiff's claims for minimum wages under the FLSA and the NJWHL and for untimely payment of wages under the NJWPL are solely related to Defendants' failure to pay overtime wages for all hours worked in excess of forty (40) per week and are therefore subsumed within Plaintiff's damages for unpaid overtime wages under the FLSA and NJWHL." (Mot. at 8 n.2.) The Court thus need not rehash the analysis in the previous section; Plaintiff has sufficiently stated claims for recovery of minimum wages and wages untimely paid as those claims are identical to his claims for recovery of unpaid overtime wages.

### iii. Count 6: Fraudulent Filing of Information Returns

26 U.S.C. § 7434(a) provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." An action under the

10

statute must be commenced within 6 years after the date of the filing of the fraudulent information return" or "1 year after the date such fraudulent information return would have been discovered by exercise of reasonable care." 26 U.S.C. § 7434(c). Additionally, "[a]ny person bringing an action under subsection (a) shall provide a copy of the complaint to the Internal Revenue Service upon the filing of such complaint with the court." 26 U.S.C. § 7434(d). In analyzing claims under this statute, at least one other Court in the District of New Jersey has adopted the holding of *Liverett v. Torres Advanced Enterprise Solutions LLC*, 192 F. Supp. 3d 648, 653 (E.D. Va. 2016), which found that the statute only creates a private right of action "where a defendant willfully files information returns that misrepresent the amount of payments made." *Sirin v. Portx, Inc.*, No. 20-7853, 2020 WL 6194018, at *6-7 (D.N.J. Oct. 22, 2020). This Court will adopt the same conclusion here.

In this case, Plaintiff sufficiently states a claim that Defendants filed false information returns with the IRS by misrepresenting the amounts they paid to Plaintiff. Plaintiff alleges that Defendants paid him part of his wages in checks (with withholdings for federal, state, and local taxes) and part in cash (without tax withholdings), and that Defendants filed false and fraudulent W-2 forms that did not reflect the cash payments they made to Plaintiff. (*Id*. ¶¶ 34-38.) Taken as true, these allegations sufficiently plead a claim pursuant to the private right of action under 26 U.S.C. § 7434.

### d. Whether the Entry of Default Judgment Would Be Proper

Defendants have no meritorious defense based on the limited record before the Court. *See e.g.*, *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding no meritorious defense where court could not determine its existence since defendant did not respond). *Salins v. EMR Tech. Sols., Inc.*, 2023

11

WL 7386844, at *8 (D.N.J. Nov. 8, 2023).  Defendants did file an Answer to the Complaint, which featured mere denials of the allegations without offering substantive arguments or defenses.  (ECF 15.)  Since their counsel withdrew (ECF 23, 29), Defendants have failed "to participate in this action in any meaningful way*.*"  *Bibbs v. Sec. Atl. Mortg. Co.*, No. 10-0346, 2012 WL 3113975, at *3 (E.D. Pa. Aug. 1, 2012).  Defendant Almonte did submit two letters (ECF 50, 54) describing certain financial and familial hardships that she alleges have impeded her ability to litigate this case, but after receiving those letters, the Court granted her multiple opportunities to find new counsel or proceed in the matter *pro se*, with multiple extension over a period of several months, and she still failed to defend this action.

Plaintiff is clearly prejudiced by Defendants' failure to respond as Plaintiff has been prevented from prosecuting his case and seeking relief.  *See Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) ("Plaintiff will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm caused by Defendant.").

Defendants' default results from their own culpability.  Defendants have failed to respond to this Court's orders, discovery requests and other correspondence from Plaintiff, all without justification, and in spite of the fact that the Court has allowed ample time for Defendants to either engage counsel to assist them or act on their own behalf.  *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (finding that failure to respond

to court orders and communications from plaintiff can constitute culpability for the purposes of default). Accordingly, the Court will enter default judgment against Defendants.

### e. Relief

Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages. *Moroccanoil Inc. v. JMG Freight Group LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). To prove damages, Plaintiff submits a spreadsheet calculating his minimum and overtime wages owed against the wages he was actually paid. (ECF 47, Ex. 5.) Plaintiff alleges that he was paid $850 per week, which amounts to an hourly rate of $21.25 for a standard 40-hour work week. (*Id.*) The overtime rate is one-and-a-half times $21.25, which is $31.88. (*Id.*) Plaintiff alleges that he worked 26 hours overtime per week, which means that he was owed $828.88 per week. (*Id.*) The employment period was 81 weeks from February 1, 2021 to August 25, 2022, meaning that, in total, Plaintiff's unpaid overtime wages amount to $67,139.28. (*Id.*) The NJWHL contains a liquidated damages clause that allows a plaintiff to recover up to 200 percent of the unpaid compensation, amounting to $134,278.56. (*Id.*; *see also* N.J.S.A. 34:11-56a25). 26 U.S.C. § 7434(b) provides that, upon a finding of liability under this statute, "the defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000" or the sum of actual damages resulting from the fraudulent filing, plus the costs of action and attorney's fees. This brings the grand total of Plaintiff's claimed base damages (which include the unpaid overtime compensation, the liquidated damages under the NJWHL, and the statutory damages under 26 U.S.C. § 7434(b)) to $206,417.84. (*Id.*) Plaintiff also argues that he is entitled to prejudgment interest, accruing from the midpoint date of his employment (November 13, 2021), and totaling $18,122.25. (*Id.*) Plaintiff's attorney's fees amount to $35,256.50 as of the filing date of the Motion, and he claims other litigation expenses, such as the filing fee and

administrative services, amounting to $1,165.40. (*Id*. 6, 7.) Altogether, Plaintiff seeks $260,961.99 worth of relief.

At minimum, Plaintiff is entitled to recover his unpaid overtime compensation amounting to $67,139.28, the $5,000 in mandatory damages under 26 U.S.C. § 7434(b), his attorney's fees amounting to $35,256.50, and his litigation costs amounting to $1,165.40.[5] Both the FLSA and the NJWHL contain liquidated damages provisions. The FLSA provides that "any employer who violates the provisions of section 206 or 207 *shall* be liable the employee…affected in the amount of…their unpaid overtime compensation…and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added). Under this provision, Plaintiff is entitled to an additional $67,139.28. The NJWHL provides that, in an action such as this, "the employee *may* recover…the full amount of that minimum wage less any amount actually paid to him…and an additional amount equal to not more than 200 percent of the amount of unpaid minimum wages…as liquidated damages, plus costs and reasonable attorney's fees." N.J.S.A. 34:11-56a25 (emphasis added). The Court thus finds that the additional amount of $67,139.28 is sufficient to satisfy the liquidated damages requirements of both statutes. "[A] district court is to consider four factors in determining whether an award of prejudgment interest is appropriate: (1) whether the claimant has been less than diligent in prosecuting the action; (2) whether the defendant has been unjustly enriched; (3) whether an award would be compensatory; and (4) whether countervailing equitable considerations militate against a surcharge." *Feather v. United Mine Workers of Am.*, 711 F.2d 530, 540 (3d Cir. 1983) Here, the Court finds that an award of prejudgment interest is not warranted, as the equitable considerations counsel against imposing an additional punitive

---

[5] Attorney's fees and costs are appropriate here because the FLSA also provides that "[t]he court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

surcharge on Defendants. As such, Plaintiff's total award in this case will be $175,700.46, which accounts for the actual unpaid compensation, liquidated damages equal to the unpaid wages, attorney's fees, litigation costs, and the $5,000 penalty for filing fraudulent information returns.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment (ECF 45) is **GRANTED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Michael A. Hammer, U.S.M.J.
     Parties